**FILED**

April 2 2014

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

OP 14-0146

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2014 MT 90

_____

TRAVIS HOFFMAN, MELISSA SMYLIE and
KIM ABBOTT,

      Petitioners,

    v.

STATE OF MONTANA, HONORABLE TIM
FOX, in his capacity as Attorney General, and
HONORABLE LINDA McCULLOCH, in her
Capacity as Secretary of State,

      Respondent.

                              O P I N I O N
                              A N D
                              O R D E R

_____

¶1     Before the Court is an original proceeding filed pursuant to § 13-27-316(2), MCA. The Combined Petition was filed on March 10, 2014, and the Attorney General responded within the time allowed by law. The Petition challenges the legal sufficiency of Initiative No. 171 (I-171) and seeks an order enjoining the Secretary of State from approving petitions for circulation to the electorate for signatures or otherwise submitting the measure for approval by the voters. The Petition further seeks a declaration that I-171 is unconstitutional and void and may not appear on the ballot. For the reasons explained below, the Court denies the Petition.

1

**BACKGROUND**

¶2 The proposed ballot measure was submitted to the Montana Secretary of State on December 18, 2013. It would prohibit the State of Montana and its political subdivisions from using funds, resources or personnel to administer or enforce the federal Patient Protection and Affordable Care Act, Public Law No. 111-148 ("Affordable Care Act"). The measure also would prohibit expansion of the Montana Medicaid Program as provided for by the Affordable Care Act and would prohibit the state and its political subdivisions from planning, creating or participating in a health insurance exchange.

¶3 The Secretary of State submitted the proposed ballot measure to the Attorney General pursuant to § 13-27-202, MCA, for review and preparation of ballot statements in accordance with § 13-27-312, MCA. The Attorney General obtained a fiscal note from the Governor's Budget Office and solicited public comment on proposed ballot statements. On February 27, 2014, the Attorney General approved the measure for legal sufficiency and returned it to the Secretary of State with a statement of purpose and a fiscal statement, to be placed on the petitions for circulation and on the ballot if the measure qualifies. In accordance with § 13-27-312(7), MCA, the Attorney General notified the Secretary of State that the proposed measure conflicts with another measure that is proposed for the ballot at the November 2014 general election. The Secretary of State approved the initiative petition for signature gathering on March 10, 2014.

¶4 Petitioners raise four grounds in support of their argument that I-171 is not legally sufficient. First, they challenge the adequacy of the ballot statements approved by the

2

Attorney General. Second, they assert that the measure addresses a matter concerning an appropriation of money and therefore is outside the initiative power prescribed by Article III, Section 4(1) of the Montana Constitution. Third, they argue that the measure contains more than one subject, in violation of Article V, Section 11(3) of the Montana Constitution. Fourth, they contend that the measure is unconstitutional under the Supremacy Clause of the United States Constitution, U.S. Const. Art. VI, cl. 2, because it proposes a state law that is completely preempted "as an obstacle to the accomplishment and execution of" the ACA. *English v. Gen. Elec. Co.*, 496 U.S. 72, 79, 110 S. Ct. 2270, 2275 (1990).

¶5 The Attorney General responds that the ballot statements fairly and impartially explain the proposed ballot measure in plain language within the word limits provided by statute and that the Petitioners' remaining challenges exceed the scope of his legal sufficiency review of a proposed ballot measure. In the alternative, the Attorney General submits that the proposed ballot measure meets minimum constitutional requirements to proceed with signature-gathering and qualification for the ballot.

## DISCUSSION

¶6 *1. Did the Attorney General correctly determine that I-171 is legally sufficient?*

¶7 The Attorney General is required by § 13-27-312(1), MCA, to examine a proposed ballot issue for legal sufficiency and determine whether the ballot statements comply with statutory requirements. "Legal sufficiency" means "that the petition complies with statutory and constitutional requirements governing submission of the proposed issue to

3

the electors." Section 13-27-312(7), MCA. The Attorney General's legal sufficiency review "does not include consideration of the substantive legality of the issue if approved by the voters." Section 13-27-312(7), MCA.

¶8 We have made clear in several recent opinions that the Attorney General's legal sufficiency review does not authorize him to withhold a proposed ballot measure from the ballot for an alleged substantive constitutional infirmity. *MEA-MFT v. State of Montana*, 2014 MT 33, ¶ 11, 374 Mont. 1, 318 P.3d 702; *Montanans Opposed to I-166 v. State of Montana*, 2012 MT 168, ¶ 6, 365 Mont. 520, 285 P.3d 435; *see also Mont. Consumer Fin. Ass'n v. State*, 2010 MT 185, ¶ 9, 357 Mont. 237, 238 P.3d 765. Our most recent opinion on the subject determined a ballot measure to be legally deficient because it did not meet the statutory requirements governing submission of a legislative referendum to the electors. *MEA-MFT v. State of Montana*, 2014 MT 76, ___ Mont. ___, ___ P.3d ___.

¶9 As an executive officer of the State of Montana, the Attorney General does not have the authority to make a declaration regarding the constitutionality of I-171. "Constitutional questions are properly decided by a judicial body, not an administrative official, under the constitutional principle of separation of powers." *Mitchell v. Town of W. Yellowstone*, 235 Mont. 104, 109, 765 P.2d 745, 748 (1988) (quoting *Jarussi v. Bd. of Trustees*, 204 Mont. 131, 135-36, 664 P.2d 316, 318 (1983)). If a law is repugnant to the Constitution, it is the courts that "have the power, and it is their duty, so to declare." *In re Clark's Estate*, 105 Mont. 401, 411, 74 P.2d 401, 406 (1937); *see also Stuart v. Dept.*

4

*of Soc. & Rehab. Servs.*, 247 Mont. 433, 438, 807 P.2d 710, 713 (1991) ("When . . . a bona fide constitutional issue is raised, a plaintiff has a right to resort to the declaratory judgment act for a determination of his rights[.]") (quoting *Mitchell*, 235 Mont. at 109-10, 765 P.2d at 748).

¶10     The statutes governing the process for submission of initiatives and referenda and legal challenges thereto were substantially amended in 2007. 2007 Mont. Laws ch. 481. Under the laws as amended, this Court may exercise original jurisdiction only to review the proposed ballot statements for initiatives and referenda and to review the Attorney General's legal sufficiency determination. The statute does not confer original jurisdiction for any other purposes. Section 3-2-202(3)(a), MCA. Prior to the 2007 amendments, the statute provided for this Court's consideration of a "constitutional defect in the substance of a proposed ballot issue[.]" Section 3-2-202(3)(a)(ii), MCA (2005). That provision was removed. 2007 Mont. Laws ch. 481, § 1. The two recent cases in which ballot measures were stricken from the ballot for substantive constitutional infirmity were not original proceedings, but cases that originated in the district courts and were decided by this Court in the ordinary course of appeal. *MEA-MFT v. McCulloch*, 2012 MT 211, 366 Mont. 266, 291 P.3d 1075; *Reichert v. State*, 2012 MT 111, 365 Mont. 92, 278 P.3d 455. Further, the Legislature has expressly preserved "the right to challenge a constitutional defect in the substance of an issue *approved by a vote of the people*." Section 13-27-316(6), MCA (emphasis added).

5

¶11    Petitioners' legal sufficiency claims are grounded in three distinct constitutional challenges to I-171. They first argue that I-171 violates Article V, Section 11(3) of the Montana Constitution because it contains more than one subject. Petitioners claim that at least three distinct subjects are included in the measure: (1) prohibiting the enforcement of the ACA, "which itself addresses at least 28 different subjects"; (2) prohibiting Medicaid expansion; and (3) prohibiting health care exchanges. Petitioners next claim that I-171 is unconstitutional under the Supremacy Clause of the United States Constitution, Art. VI, cl. 2, because the proposed ballot measure is completely preempted by the ACA. Finally, Petitioners claim that I-171 "attempt[s] to enact a law by initiative that addresses a matter concerning the appropriation of money" and therefore is unconstitutional under Article III, section 4(1) of the Montana Constitution. That section provides: "The people may enact laws by initiative on all matters except appropriations of money and local or special laws." Petitioners acknowledge that I-171 does not appropriate money; they argue, however, that it interferes with funds the Legislature already has appropriated for the 2013 biennium and therefore runs afoul of this constitutional provision.

¶12    We conclude that none of these constitutional claims meets the definition of a legal deficiency within the scope of the Attorney General's authority on review of a proposed ballot measure. We conclude further that none of the claims presents an appropriate basis on which to invoke this Court's original jurisdiction under § 13-27-316(2), MCA. When the Legislature has prescribed the process by which a

6

ballot measure may be challenged in court, we have required compliance with that process. *State ex rel. Mont. Citizens for the Preservation of Citizens' Rights v. Waltermire*, 224 Mont. 273, 278, 729 P.2d 1283, 1286 (1986). We express no opinion on the merits of any of Petitioners' constitutional claims or whether any such claims would be appropriate for pre-election review. As no other challenge is raised to the Attorney General's determination of legal sufficiency, we find no basis to disturb that determination in this proceeding.

¶13    2. *Do the ballot statements for I-171 satisfy the requirements of law?*

¶14    Petitioners allege that the statements of purpose and implication fail to identify the measure in a manner that will allow a Montana voter to exercise his or her political judgment. They claim that the statements are faulty because they do not explain to voters that all twenty-eight substantive provisions of the ACA will be void in the State of Montana if I-171 is passed. Petitioners posit that it is wholly unreasonable to expect a voter to decipher the numerous federal statutes that would be affected by the measure, and that the statements fail to explain its substantial and far-reaching consequences on existing Montana programs. Petitioners also claim that the Attorney General improperly has utilized the fiscal statement to explain some of the provisions of the initiative itself.

¶15    The Attorney General's explanatory statement provides as follows:

> [Initiative No. 171] prohibits the State of Montana and its political subdivisions from using funds, personnel or other resources to administer or enforce the federal Affordable Care Act. [I-171] prohibits expansion of the Montana Medicaid program as provided under the Affordable Care Act. [I-171] further prohibits the state and its political subdivisions from planning, creating or participating in a health insurance exchange.

7

The fiscal statement provides:

> The State would save approximately $1.92 billion in state revenues and lose $4.75 billion in federal revenues over five years based on an assumption that the federal government would end the state's Medicaid Plan, Children's Health Insurance Plan, and several other programs due to noncompliance with the Affordable Care Act.

¶16 As we noted in *MEA-MFT,* 2014 MT 33, ¶ 11, "the ballot language must 'identify the measure on the ballot so that a Montana voter, drawing on both official and unofficial sources of information and education, will [be able to] exercise his or her political judgment.'" (quoting *Harper v. Greely*, 234 Mont. 259, 269, 763 P.2d 650, 657 (1988)). By statute, the Attorney General's statement of purpose and implication is limited to 135 words and the fiscal statement is limited to 50 words. Section 13-27-312(2)(a), (3), MCA. The Petitioners cite no authority for their argument that the fiscal statement must not contain any explanation of the initiative. They do not challenge the fiscal statement's explanation of I-171's effect "on the revenue, expenditures, or fiscal liability of the state[.]" Section 13-27-312(3), MCA. The statement of purpose and implication mentions each of the three topics the Petitioners claim will be affected by the proposed initiative. Given the complexity of the ACA and the impacts of its non-enforcement in Montana, the Attorney General's statement captures its purpose, implication, and fiscal impacts in summary fashion and is sufficient to inform the voters of the implication of a vote for or against the measure. We conclude that the Attorney General's ballot statements satisfy the requirements of § 13-27-312, MCA.

¶17    IT IS THEREFORE ORDERED that the Petitioners' request that this Court, in the exercise of its original jurisdiction pursuant to § 13-27-316(2), MCA, declare I-171 legally deficient and void and enjoin its circulation for signatures is DENIED.

¶18    The Court having determined that additional briefing on the Petition is unnecessary,

¶19    IT IS FURTHER ORDERED that the Petitioners' motion for leave to file a reply brief is DENIED.

¶20    The Clerk is directed to provide notice of this Order to all counsel of record and to the Montana Secretary of State.

DATED this 2nd day of April, 2014.


/S/ BETH BAKER


We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ PATRICIA COTTER
/S/ JIM RICE