JUSTICE WARNER
delivered the Opinion of the Court.
¶1 A committee called Stop Overspending Montana (Proponents) petitioned for the adoption of Constitutional Initiative No. 97. The basic effect of the initiative is to amend Article VIII, Section 9 of the Montana Constitution to include an additional limit on appropriations by the Legislature to an amount that is determined by applying a formula based on the growth rate of the population and inflation unless the increase is approved by the electorate.
¶2 The material facts in this litigation are not disputed. Proponents’ petition to place CI-97 on the ballot was approved by the Secretary of State, as required by Title 13, Chapter 27, Parts 2 and 3, MCA. It then was transmitted to the Attorney General as required by § 13-27-312, MCA. The Attorney General, after approving the petition as to form, sought and obtained the advice of parties on both sides of the issue as well as unsolicited comments from others. In addition, as CI-97 has a fiscal impact, it was submitted to the budget director for preparation of a fiscal note.
¶3 In compliance with §§ 13-27-312(2)-(3), MCA, the Attorney General prepared separate statements explaining the purpose of the measure, the implications of a vote for and a vote against the measure, and a fiscal statement.
¶4 Proponents were dissatisfied with the statements prepared by the Attorney General. They timely filed a complaint in the District Court for the First Judicial District, Lewis & Clark County, requesting the Court to alter all three of the Attorney General’s statements; that is, the statement explaining the purpose of the measure, the statements of the implications of a vote for and a vote against the measure, and the fiscal statement.
¶5 The Attorney General was served with the complaint. He did not immediately answer. Proponents did not move the District Court to *46 expedite the court action.[1] Proponents immediately proceeded to print petitions calling for the adoption of CI-97 and started collecting signatures. The petitions which registered voters have signed contain the statements prepared by the Attorney General.
¶6 After a hearing, the District Court promptly considered the questions presented and entered its Decision and Order on June 14, 2006. The District Court determined that the statement of the purpose of CI-97 drafted by the Attorney General was not true and accurate, the statements of implication drafted by the Attorney General were not true and, likewise, the fiscal statement drafted by the Attorney General was inaccurate and, consequently, untrue. The District Court rewrote all of the statements, and ordered that its amended statements be placed on the ballot concerning CI-97, should the measure become qualified for submission to the electorate.
¶7 The District Court also rejected the Attorney General’s argument that § 13-27-312, MCA, requires that the statements on the petitions that are circulated and those on the ballot be the same. As a result, it declined to invalidate the signatures already gathered on petitions which do not contain the court’s revised statements.
¶8 The Attorney General appealed the District Court order. This Court ordered expedited briefing, and has advanced this case on its calendar.
¶9 The order of the District Court is reversed.
¶10 Mixed questions of law and fact are presented to this Court when the historical facts of a case are admitted or established, the applicable law is undisputed, and the issue is whether the facts satisfy the statutory standard. State v. Warclub, 2005 MT 149, ¶ 21, 327 Mont. 352, ¶ 21, 114 P.3d 254, ¶ 21 (citing Lambert v. Blodgett (9th Cir. 2004), 393 F.3d 943, 965 (citing Pullman-Standard v. Swint (1982), 456 U.S. 273, 289 n. 19, 102 S.Ct. 1781, 1790, 72 L.Ed.2d 66, 80)). The statements prepared by the Attorney General are before the Court, and there is no dispute which statutes apply. The issues in this case present mixed questions of law and fact. This Court reviews mixed questions of law and fact de novo. Duffy v. State, 2005 MT 228, ¶ 10, 328 Mont. 369, ¶ 10, 120 P.3d 398, ¶ 10.
¶11 Section 13-27-312(4), MCA, contains the requirements for drafting statements of purpose and implication:
*47 The statement of purpose and the statements of implication must express the true and impartial explanation of the proposed ballot issue in plain, easily understood language and may not be arguments or written so as to create prejudice for or against the measure. Statements of implication must be written so that a positive vote indicates support for the measure and a negative vote indicates opposition to the measure.
¶12 The Attorney General has been designated by the Legislature as the public official who is to prepare the statements at issue. As long as the Attorney General’s explanatory statement uses ordinary plain language, explains the general purpose of the issues submitted in language that is true and impartial, and not argumentative or likely to create prejudice either for or against the issue, the requirements of the law are met. State ex rel. Wenzel v. Murray (1978), 178 Mont. 441, 448, 585 P.2d 633, 637. If the proponents of a ballot measure believe that the statements prepared by the Attorney General do not satisfy the requirements of § 13-27-312, MCA, they may challenge the adequacy of the statements in the First Judicial District Court, Lewis & Clark County. Section 13-27-316(1), MCA.
¶13 The statement of purpose prepared by the Attorney General reads:
The Montana Constitution currently prohibits appropriations by the legislature that exceed anticipated revenue. This measure adds a constitutional spending limit that would prohibit increases in appropriations greater than the combined growth rate of population and inflation. It allows appropriations up to the largest spending limit for any previous biennium. Emergencies, debt payments, pro-rata tax rebates, various appropriations expressly provided by the Montana Constitution, and expenditures from funding sources including the federal government, constitutionally created trusts, and certain user fees are not included in the spending limit. The legislature may exceed the spending limit only with voter approval.
¶14 The District Court did not determine that the Attorney General failed to use easily understood language in the statement of purpose or that it was written so as to create prejudice for or against the measure. The District Court determined that the Attorney General’s statement is inaccurate in referring to the growth rate of population and inflation, rather than a change in those factors, as reflected in the text of the measure. It also determined the Attorney General’s statement omitted salient provisions of the measure and, consequently, *48 was not a true explanation of the measure. The District Court then rewrote the statement of purpose and certified its statement to the Secretary of State.
¶15 The District Court was incorrect when it determined that the Attorney General’s statement of purpose is inaccurate in referring to the growth rate of population and inflation rather than a change in these factors. It is the purpose of the initiative to limit the ability of the Legislature to increase appropriations greater than an amount that is to be determined by considering any growth in Montana’s population, and also considering inflation, a factor that takes into account any increase in the costs of goods and services. The measure does not provide that the legislature must decrease appropriations in the event Montana’s population decreases or deflation occurs. Thus, the statement of purpose drafted by the Attorney General is not inaccurate.
¶16 The District Court also determined that the Attorney General’s statement of purpose omits “salient provisions” of the measure and, therefore, is not a true explanation of it. The District Court’s rewritten statement, similar to that drafted by the Attorney General, refers to items that are not included in the limit. What the District Court added to the statement of purpose were statements that any Montana resident or business could sue to enforce the new measure, could recover costs and fees if the suit is successful, and that the new limit would apply to the next Legislature. In order to add these statements and remain within the statutorily-mandated 100-word limit, the District Court changed the first sentence of the Attorney General’s statement and shortened the statement of items exempted from calculating the limit that is imposed on new appropriations.
¶17 We decline to hold, in this instance, that the statement of the Attorney General is untrue and biased because it does not say a lawsuit may be brought to enforce it, and that it will, if adopted, be binding on the next Legislature. Section 13-27-312(2)(a), MCA, requires the Attorney General, after seeking comments, to prepare a statement of the purpose of the measure containing not more than 100 words. Necessarily, a complete description of every part of the measure cannot be included. There are numerous portions of the initiative, which is lengthy and complicated, that could be deemed salient to voters. They cannot all be truthfully described in 100 words. The statement of purpose prepared by the Attorney General does state the purpose of CI-97; that is, what it will do. The Attorney General’s statement of purpose then briefly describes some elements of how the *49 measure’s purpose will be accomplished, if it is adopted, and closes by stating that the limit on appropriations can be exceeded if approved by the electorate. It is not for a court to add to the requirements of § 13-27-312, MCA, that to be adequate, a statement of the purpose of an initiative must include a description of how it can be enforced, or a statement of when it will become effective. See § 1-2-101, MCA.
¶18 By our ruling here, we do not determine that the corrections and additions ordered by the District Court are patently wrong, or even that this Court would not prefer the District Court’s rendition of the statement over that of the Attorney General. Nor do we conclude that the Court or individual Justices could not do a better job of drafting a statement of purpose.[2] What we do hold is that the statement of purpose prepared by the Attorney General adequately meets the statutory obligation to provide a true and impartial explanation of the proposed ballot issue in plain, easily understood language that is not drafted so as to create prejudice for or against the measure. To foreclose the prospect of endless and subjective challenges, as long as the statement of purpose prepared by the Attorney General meets all the requirements of § 13-27-312(4), MCA, we will defer to his decision. Because the statement of purpose prepared by the Attorney General is adequate to meet the requirements of the law, we decline to engage in an unnecessary comparison of such statements with those written by the District Court.
¶19 The statements of implication prepared by the Attorney General are:
FOR limiting the increase in appropriations to the combined growth rate of population and inflation, or the largest spending limit for any previous biennium.
AGAINST limiting the increase in appropriations to the combined growth rate of population and inflation, or the largest spending limit for any previous biennium.
¶20 Similar to its determination regarding the statement of purpose, the District Court determined that the Attorney General’s statements of implication were not a true and impartial explanation of the measure because of the inaccurate references to “growth rate” rather than the “change” in population and inflation. It rewrote those *50 statements, again substituting “change” for “growth,” and added to the statements that the voters can approve a higher spending limit. In order to do this and remain within the fifty word limit imposed by § 13-27-312(2)(b), MCA,[3] the District Court deleted from the statements that appropriations could remain at the largest spending limit for any previous biennium.
¶21 For the same reasons stated in our consideration of the Attorney General’s statement of purpose above at ¶ 15, we conclude that the use of the term growth, rather than change, does not render the statements of implication prepared by the Attorney General untruthful or biased.
¶22 CI-97 provides that appropriations may remain at the largest spending limit for any previous biennium, and that the voters can approve a higher spending limit. The District Court seems to agree with the Attorney General that the information that a cap on appropriations based on the factors of population and inflation is fairly included in the statements of implication. The District Court did not give an explanation of why it determined that the ability of voters to approve a higher spending limit is of greater importance than that the measure allows appropriations to remain at the same level even if Montana’s population decreases or deflation occurs. Both are important parts of the measure. However, this Court can discern no reason why one of these provisions of CI-97 is of greater import than the other. Both are clearly set forth in the statement of purpose, and thus both will be before the voters when they cast their ballots. We conclude that the statements of implication prepared by the Attorney General satisfy the statutory requirements of § 13-27-312(4), MCA, and, consequently, that the District Court erred in rewriting them.
¶23 The fiscal statement prepared by the Attorney General reads:
This measure may require reduced future expenditures in several areas of government services where caseloads historically have grown at a rate exceeding combined growth in population and inflation, such as correctional population and Medicaid recipients, or may require reduced future expenditures in other areas to offset those increasing caseload costs.
¶24 Contrary to the argument of the Attorney General, we conclude that § 13-27-316, MCA, provides for court review of the fiscal statement attached to a proposed ballot measure where the proponents *51 of the measure believe the statement does not satisfy the requirements of § 13-27-312, MCA. In State v. Waltermire (1986), 224 Mont. 230, 232, 730 P.2d 375, 376, this Court held:
The legislative history of § 13-27-316, MCA, indicates that the legislature intended a clear and speedy means by which both proponents and opponents could attack the sufficiency of statements of purpose and implication and fiscal notes. The statutory procedure allows district court and Supreme Court review for correction of any deficiencies so that the initiative might still be presented to the voters at the general election.
¶25 Because CI-97 has an effect on state expenditures, § 13-27-312(1), MCA, requires the Attorney General to order a fiscal note incorporating such effect, the substance of which must substantially comply with the provisions of § 5-4-205, MCA. Section 5-4-205, MCA, provides for the contents of fiscal notes presented to the Legislature dining its consideration of introduced bills having a fiscal impact. It reads:
Fiscal notes shall, where possible, show in dollar amounts the estimated increase or decrease in revenues or expenditures, costs which may be absorbed without additional funds, and long-range financial implications. No comment or opinion relative to merits of the bill shall be included; however, technical or mechanical defects may be noted.
Section 5-4-205, MCA.
¶26 The fiscal note requested by the Attorney General was prepared by the Governor’s Office of Budget and Program Planning. It consists of a three-page letter, containing some history of population growth and inflation in Montana, and noting that over the long term it is likely that the level of services offered by state government will be reduced as policymakers choose to reduce services rather than put additional measures on the ballot. The fiscal note says that the fiscal impact of the measure is unknown. As required by § 13-27-312(3), MCA, the Attorney General prepared the above fiscal statement of no more than fifty words.
¶27 The District Court determined that the fiscal statement prepared by the Attorney General contained the same inaccuracy as the previous statements because it referred to growth rate, rather than change. Again, this Court disagrees with the District Court, for the same reasons stated in ¶ 15. Then, without stating why, the District Court also determined that the fiscal statement was confusing and misleading upon a cursory reading, and rewrote it.
*52 ¶28 Proponents argue that the Attorney General’s fiscal statement is insufficient because it does not contain estimated dollar amounts of any anticipated increase or decrease in revenues or expenditures.
¶29 Upon review, the Court concludes that the fiscal statement prepared by the Attorney General is satisfactory, if not perfect, and satisfies the requirements of both §§ 13-27-312, and 5-4-205, MCA. Section 5-4-205, MCA, only requires that a fiscal note show dollar amounts when such is possible. The Office of Budget and Program Planning did not deem it possible to show its conclusions in dollar amounts. The record does not contradict such determination. Some possible long-range financial implications are mentioned in the Attorney General’s fiscal statement but it does not appear from the record that such are untrue. The fiscal statement does not contain a comment or an opinion concerning CI-97, and it does not note any technical or mechanical defects in the measure. Also, upon review, the Court concludes that the Attorney General’s fiscal statement is not confusing or misleading.
¶30 The Attorney General, as an alternative prayer, asks this Court to reverse the District Court’s determination that signatures on petitions, which do not contain the same statements as those appearing on the ballot, are nevertheless valid. However, as we determine that the statements prepared by the Attorney General are sufficient, we need not reach this question.
¶31 This Court concludes that the statements of the Attorney General are sufficient to meet the applicable statutory requirements. The June 14, 2006, Decision and Order of the District Court is reversed. Proponents shall have no relief by their complaint. CI-97 having qualified to be placed on the ballot[4] for the November 7, 2006, general election, shall be submitted to the electorate containing the statement of purpose, the statements of implication, and the fiscal statement as prepared by the Attorney General.
¶32 Remittitur shall issue forthwith.
JUSTICES COTTER, LEAPHART, RICE and MORRIS concur.

 Section 13-27-316(3)(a), MCA, provides that the district court “shall examine the proposed measure and the challenged statement... and shall as soon as possible render a decision^]”

 Amicus Curiae argue that this Court should again alter the statement which was rewritten by the District Court, so as to provide what they deem to be an even better statement of purpose.

 Each statement of implication must contain no more than twenty-five words.

 The Court is advised that the Secretary of State has certified that CI-97 has qualified to be placed on the ballot.